UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| S.A. TINNIN-BEY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | 1:14-cv-00944-RLY-DML |
| | ) | |
| INDIANAPOLIS PUBLIC SCHOOLS, | ) | |
| DR. EUGENE WHITE, former | ) | |
| superintendent, DR. LEWIS D. FEREBEE, | ) | |
| superintendent, KRIS WALKER-GUESS | ) | |
| principal, and HUMAN RESOURCES | ) | |
| DEPARTMENT, | ) | |
| | ) | |
| Defendants. | ) | |

**ENTRY ON CROSS-MOTIONS FOR SUMMARY JUDGMENT**

**I. Introduction**

S.A. Tinnin-Bey, Plaintiff, filed this action against Indianapolis Public Schools

("IPS"), Dr. Eugene White, Dr. Lewis D. Ferebee, Kris Walker-Guess, and Human

Resources Department[1], Defendants, pursuant to Title VII of the Civil Rights Act of

1964, 42 U.S.C. § 2000e *et seq.,* and the First, Fifth, Six, Eighth, and Fourteenth

Amendments to the U.S. Constitution, actionable via 42 U.S.C. § 1983.  This matter now

comes before the court on the parties' cross-motions for summary judgment pursuant to

Federal Rule of Civil Procedure 56(a).  Plaintiff moved twice for partial summary

judgment on his Title VII and First Amendment claims, while Defendants moved for

---

[1] Defendants state that the IPS Human Resources Department is not a legal entity subject to suit.
Plaintiff offers no response.  However, resolution of this argument is unnecessary given the
court's disposition of the case.

1

summary judgment on all of Plaintiff's claims.  For the reasons set forth below, the court **GRANTS** Defendants' motion and **DENIES** Plaintiff's motions.

## II. Legal Standard

Rule 56(a) authorizes the court to grant summary judgment when there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The court is required to enter summary judgment "after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

In short, "[S]ummary judgment is the put up or shut up moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of the events."  *Springer v. Durflinger*, 518 F.3d 479, 484 (7th Cir. 2008). Initially, the moving party bears the burden of demonstrating the basis for its motion by citing to specific materials in the record that demonstrate an absence of a genuine dispute of material fact.  *Celotex*, 477 U.S. at 323; Fed. R. Civ. P. 56(c)(1)(A).  Then, the nonmoving party is required "to go beyond the pleadings and by her own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial."  *Celotex*, 477 U.S. at 323 (internal quotation marks omitted).

When a litigant appears in federal court unrepresented, as Plaintiff does here, the court construes his filings liberally.  *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam).  Nonetheless, Plaintiff is still required to abide by the rules of procedure: "[A plaintiff's] *pro se* status doesn't alleviate his burden on summary judgment."  *Arnett v. Webster*, 658 F.3d 742, 760 (7th Cir. 2011).  Thus, the summary judgment standard must be enforced in this case just as if Plaintiff was represented by counsel.

In reviewing a motion for summary judgment, the court typically construes the facts and draws all reasonable inferences in the light most favorable to the non-moving party.  *Adams v. Wal-Mart Stores, Inc.*, 324 F.3d 935, 937 (7th Cir. 2003).  Yet, "When the non-movant fails to comply with the district court's procedures for handling summary judgment motions, however, the non-movant may as a practical matter lose much of the benefit of that rule."  *Id.*  In this case, Plaintiff mixed arguments with facts in his motions for summary judgment, and then failed to specifically respond to Defendants' statement of material facts when they filed a cross-motion.  Under these circumstances, the court may proceed as if Plaintiff has admitted Defendants' version of the material facts.  *Id.* *See* Fed. R. Civ. P. 56(e); S.D. Ind. L.R. 56-1(f).

**III. Statement of Material Facts Not in Dispute**

Plaintiff began working for IPS as a behavior adjustment facilitator at Meridian Transition School, an alternative high school, in August 2007.  (Filing No. 1, Complaint at Part IV, ¶¶ 1-2).  In this position, Plaintiff was responsible for monitoring and redirecting the counterproductive behavior of students who had been assigned to in-

school suspension.  (*Id.* at Part IV, ¶ 3).  He was also charged with assisting the school

police officer in pat-down searches of students.  (*Id.*).

Between October 2008 and April 2009, Plaintiff was the subject of three

complaints from three different students at Meridian Transition School.  (*Id.* at Part IV,

¶¶ 4-6).  First, a male student lodged a complaint with the Indiana Department of Child

Services ("DCS"), alleging that he was inappropriately touched by Plaintiff during a pat-

down search.  (*Id.* at Part IV, ¶ 4).  That complaint was unsubstantiated.  (*Id.*).  Later, a

female student reported that Plaintiff gave her his business card and suggested that she

call him when she turned eighteen.  (*Id.* at Part IV, ¶ 5).  Plaintiff states that this

complaint was unsubstantiated.  (*Id.*).  Finally, Plaintiff was involved in a physical

altercation with a different male student, during which Plaintiff returned a shove, thereby

causing the student's head to hit a wall.  (*Id.* at Part IV, ¶ 6; Filing No. 57-1, Deposition

("Dep.") of Plaintiff at 56:16-57:25).  According to Plaintiff, that student was arrested for

assaulting a staff member.  (*Id.*).  Following these incidents, IPS transferred Plaintiff to

Francis W. Parker Montessori Elementary School #56.  (Complaint at Part IV, ¶ 8).

In 2010, Plaintiff became a volunteer member of the IPS Diversity Cadre

Committee.  (*Id.* at Part IV, ¶ 16).  This committee is charged with "infusing cultural

diversity" into the school system.  (*Id.*).

Plaintiff identifies his national origin as Moorish.  (*Id.* at Part III, ¶ 2).  Plaintiff is

a member of the Moorish Science Temple of America, Inc.  (*Id.* at Part IV, ¶ 9).

According to Plaintiff, members of this organization practice a religion they refer to as

"Islamism."  (Filing No. 57-6, Plaintiff's Response to Defendants' Interrogatory, No. 25).

On November 28, 2012, Plaintiff sent an e-mail to various IPS personnel requesting that he be excused from work for five Moorish holidays and events throughout the year. (Complaint at Part IV, ¶ 10; Filing No. 1-2, Exhibit 2).  Specifically, Plaintiff requested a day off of work on January 8 for Moorish Christmas.  (*Id.*).  On that same day, Defendant White, who was the Superintendent of IPS at that time, replied to Plaintiff's e-mail and stated that Plaintiff would not be granted an excused day off for Moorish Christmas. (Complaint at Part IV, ¶ 11; Filing No. 1-1, Exhibit 3).

In January 2013, IPS transferred Plaintiff to Joyce Kilmer Academy Elementary School #69 at the request of Defendant Walker-Guess ("Walker-Guess"), who is the Principal.  (Complaint at Part IV, ¶ 14).  In March 2013, Plaintiff gave a presentation to the Diversity Cadre Committee, in which he advocated for including Moorish history and culture in the curriculum.  (*Id.* at Part IV, ¶ 17).

Plaintiff did not appear for work on May 28, 2013.  (*Id.* at Part IV, ¶ 21).  IPS has a policy that requires employees who need to use a sick day to notify their respective school by 7:30 a.m.  (Filing No. 1-1, Exhibit 10).  Plaintiff claims that he called Joyce Kilmer Academy in advance of this deadline and left a voice mail message advising that he was sick.  (Complaint at Part IV, ¶ 21).  According to Walker-Guess, the school has no voice mail system.  (Exhibit 10).  On May 29, 2013, Walker-Guess suspended Plaintiff for two days for his failure to report to work.  (*Id.*).  The Notice of Formal Disciplinary Action indicated that this was Plaintiff's first formal warning.

During the 2013-2014 academic year, four child abuse complaints were filed against Plaintiff.  (Complaint at Part IV, ¶ 28).  On August 23, 2013, shortly after the fall

semester had begun, Plaintiff "physically t[ook] a student, that [sic] was NOT possessing a threat to self or others, to the ground by grabbing his shirt and pant legs." (Filing No. 1-2, Exhibit C). The child alleged that Plaintiff body-slammed him into the ground. (Filing No. 1-2, Exhibit D). According to Plaintiff, he could not allow the student to "punk" him in front of the other children, so he "wrapped [the child] up around his arms[,] . . . took [his own] legs and wrapped [them] around [the child's] legs, and [] took [the child] to the floor." (Plaintiff Dep. at 89:4-9). DCS conducted an investigation and eventually concluded that the child's allegation of abuse was unsubstantiated due to lack of evidence. (Filing No. 1-2, Exhibit E). As a result of this incident, Plaintiff was suspended for one day. The Notice of Formal Disciplinary Action indicated that this was Plaintiff's first formal warning. (Exhibit C).

Shortly thereafter, a child reported that Plaintiff "had dug his fingers into [the child's] arm" and then "grabbed him by the neck." (Filing No. 1-2, Exhibit F). Plaintiff admitted to the DCS case manager that he had "got the child by the neck and upper shoulder area" in order to prevent him from running away. (*Id.*). Importantly though, the child, who had no marks or bruises, stated that his breathing was not impaired when Plaintiff grabbed him. Ultimately, the child's allegation of abuse was unsubstantiated due to lack of evidence.

On August 27, 2013, Walker-Guess placed Plaintiff on unpaid suspension while DCS conducted an investigation into the two complaints lodged that month. (Filing No. 1-2, Exhibit G). On September 2, 2013, Plaintiff wrote a five-page letter addressed to Denise Kent, an IPS human resources representative. (*See* Exhibit D). In this letter,

6

Plaintiff acknowledged the seriousness of the allegations levelled against him, expressed his view on the nature of truth and justice, supplied his version of the events leading to his suspension, and provided various justifications for his actions.  After DCS notified IPS that it had concluded both allegations of abuse were unsubstantiated, Plaintiff was permitted to return to work on or around September 30, 2013.  (Complaint at Part IV, ¶ 30; Plaintiff Dep. at 70:3-5).  In a September 27, 2013 letter from Walker-Guess to Plaintiff, Walker-Guess wrote, "While the CPS investigation was unsubstantiated for alleged child abuse, this finding does not reflect my lack of concern.  You are reminded that your conduct and comments towards students and co-workers are to remain above reproach and you are to model the behavior expected of all employees."  (Exhibit G).

On October 2, 2013, only a few days after Plaintiff's return from suspension, a student complained that Plaintiff hit him in the stomach.  (Complaint at Part IV, ¶ 31; Filing No. 1-3, Exhibit H).  This particular report did not lead to a suspension because Walker-Guess and the student's father determined that the child had fabricated the abuse. (Plaintiff Dep. 71:4-72:12; Filing No. 53-1, Affidavit of Parent of a Male Student).

On November 1, 2013, Plaintiff was disciplined for "arguing . . . with parents about an incident involving him snatching a student and calling the student inappropriate names. (Verbally abusing students)."  (Filing No. 57-9, Exhibit XI).  Plaintiff admitted that his interaction with the parents "may have bordered on the line of inappropriate." (*Id.*).  The Notice of Formal Disciplinary Action indicated that this was Plaintiff's final warning.

On November 18, 2013, a student reported that Plaintiff had pushed a table into his leg. (Filing No. 1-3, Exhibit J). Plaintiff had been attempting to take some fake money away from the student, but the student started moving around the room in an effort to avoid Plaintiff. Plaintiff then pushed a table into the wall in order to block the student's path. The student stated that the table hit his leg during this process. Plaintiff claims that he did not hit the student with the table, but rather that the student ran into it. (*Id.*; Filing No. 1-3, Exhibit L; Plaintiff Dep. at 73:2-7). DCS began an investigation, and Plaintiff was suspended pending the outcome. (Exhibit J; Filing No. 1-3, Exhibit M). DCS ultimately concluded that that the allegation of abuse was unsubstantiated due to lack of evidence. (Exhibit M).

On November 19, 2013, Plaintiff was disciplined for distributing religious material and his business card to a student. (Exhibit J). The material in question was an essay that Plaintiff authored, entitled "Attention: Negroes, Blacks, Coloreds and African-Americans Look at What Happened to You!" (Filing No. 1-3, Exhibit K). The essay had information regarding the Moorish Science Temple of America at the top of the first page. Plaintiff's business card featured the Moorish Science Temple of America's contact information as well as Plaintiff's IPS e-mail address. (Exhibit J). Plaintiff claims that he actually gave this material to the student's mother (not the student himself) after the mother had asked why her child had behavioral issues. (Complaint at Part IV, ¶ 36; Plaintiff Dep. at 74:6-17). A sworn affidavit from the parent verifies this. (Filing No. 59-1, Affidavit of Female Parent of a Male Student).

Plaintiff never returned to work following his suspension in November 2013. (Plaintiff Dep. 73:19-23).  In a letter dated January 24, 2014, Walker-Guess notified Plaintiff that she was recommending his employment be terminated due to his "ongoing unsatisfactory performance and interaction with the students, which has led to numerous investigations, both internally, and through Child Protective Services."  (Filing No. 1-3, Exhibit N).  On March 2, 2014, Defendant Ferebee, Superintendent of IPS, notified Plaintiff of his agreement with the recommendation of Walker-Guess.  (Filing No. 1-3, Exhibit P).  Plaintiff appealed that decision, and, on May 13, 2014, IPS held a hearing. (Filing No. 1-3, Exhibits Q, R).  On May 27, 2014, the hearing officer denied the appeal. (Exhibit R).  The hearing officer justified her decision by concluding,

> Although CPS reports resulted in unsubstantiated claims for abuse (due to lack of physical marks or bruises), Mr. Tinnin-Bey confirmed his physical interactions with each student and had been advised on numerous occasions (and by two separate principals) of concerns related to his interactions with parents, students and the manner in which he was supervising the Behavior Adjustment Center.

(*Id.*).

On February 3, 2014, Plaintiff filed a complaint with the Equal Employment Opportunity Commission ("EEOC"), alleging that IPS had discriminated against him on the basis of his religion and national origin.  (Filing No. 1-1, Exhibit 12).  In March 2014, the EEOC issued Plaintiff's Notice of Suit Rights.  (Filing No. 1-1, Exhibit 13).  This litigation ensued.

## IV. Discussion

### A. Discovery Disputes and Sanctions

In support of his Motion for Summary Judgment, Plaintiff relies heavily upon his allegations that Defendants did not comply with his reasonable discovery requests.  Even assuming, *arguendo*, that these allegations are true, they are not reasons for this court to grant summary judgment in Plaintiff's favor.  Summary judgment can only be granted for one reason: "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The court cannot grant summary judgment simply because one party is obstinate during the discovery process.  If that occurs in federal litigation, a party's recourse is to file a motion to compel.  *See* Fed. R. Civ. P. 37(a).  Indeed, Plaintiff did just that in this case.  Plaintiff filed two motions to compel, which the Magistrate Judge granted in part and denied in part.  (*See* Filing No. 49, Order on Plaintiff's Motions to Compel).

Buried within Plaintiff's Motion for Summary Judgment is a request for sanctions related to those motions to compel.  Plaintiff states that despite the Magistrate Judge compelling Defendants to produce the official IPS policies regarding the purchasing, installation, and preservation of video and audio equipment and recordings, Defendants never did this.  According to Plaintiff, this refusal to comply with the Magistrate Judge's order warrants sanctions.  Defendants retort that they did comply, and even provide the documents they produced for Plaintiff.  (*See* Filing No. 53-3, Attachments to Notice of

Compliance at 21-51).  In light of this evidence, the court denies Plaintiff's request for sanctions.[2]

Additionally, Plaintiff's discussion of this discovery dispute is somewhat confusing because at no point did he ask that the court stay summary judgment proceedings until this matter was resolved.  Plaintiff could have filed a Rule 56(d) motion and stated that, because certain facts were unavailable to him, he was unable to oppose Defendants' motion without further discovery.  *See Holland v. City of Gary*, 533 F. App'x 661, 662-63 (7th Cir. 2013) ("[I]f Holland needed further discovery, he should have moved under Federal Rule of Civil Procedure 56(d) (formerly Rule 56(f)), explaining why he could not yet present facts essential to his opposition.  Even pro se litigants must follow this rule.") (internal citations omitted); *Larsen v. Elk Grove Vill.*, 433 F. App'x 470, 472 (7th Cir. 2011) ("If a party—even a pro se litigant—needs further discovery to respond to a motion for summary judgment, he can file a motion under Rule 56(d) . . . explaining the reasons that he cannot present evidence essential to his opposition.").  Plaintiff states it is imperative that he be afforded the opportunity to review these policies, but his statement is contradicted by the fact that he filed his own motion for summary judgment.  Whereas Plaintiff did not file a Rule 56(d) motion and

---

[2] The court would also be warranted in denying Plaintiff's request for sanctions on the basis that it runs afoul of the Local Rules, which state, in relevant part, "Motions must be filed separately . . . .  A motion must not be contained within a brief, response, or reply to a previously filed motion, unless ordered by the court."  S.D. Ind. L.R. 7-1(a).  Plaintiff should have filed a separate motion for sanctions instead of including it within his brief in support of summary judgment.

actually filed his own summary judgment motion, the court declines to order a stay of the summary judgment proceedings *sua sponte*.

### B.  Arguments in Support of Dismissing Certain Claims

In their briefing on the cross-motions for summary judgment, Defendants quote Federal Rule of Civil Procedure 8(a)(2) and argue that some of Plaintiff's claims should be dismissed for failure to state a claim upon which relief can be granted.  However, these arguments are not properly raised at the summary judgment stage.  If Defendants intended to seek dismissal of certain claims on this ground, they should have filed a Rule 12(b)(6) motion before filing an Answer.  *See* Fed. R. Civ. P. 12(b)(6) ("A motion asserting any of these defenses must be made before pleading if a responsive pleading is allowed.").  Therefore, the court must examine Plaintiff's claims under the summary judgment framework.

### C.  Fifth, Sixth, and Eighth Amendment Claims

In his response to Defendants' arguments, Plaintiff rightly concedes that his claims brought under the Fifth, Sixth, and Eighth Amendments to the U.S. Constitution fail as a matter of law.  The Fifth Amendment's protections apply only to the federal government. *See Massey v. Wheeler*, 221 F.3d 1030, 1036 n.1 (7th Cir. 2000) ("[T]he Fifth Amendment guarantees due process by the federal government."); *United States v. 16.92 Acres of Land*, 670 F.2d 1369, 1373 n.6 (7th Cir. 1982) ("The Due Process Clause of the Fifth Amendment forbids the Federal Government to deny equal protection of the laws.").  Whereas Plaintiff filed this claim against state actors, the Fifth Amendment is inapplicable.  Similarly, the plain language of the Sixth Amendment leaves no doubt that

it can only be invoked in "criminal prosecutions."  U.S. Const. Amend. VI.  This is a civil

employment discrimination case, so the Sixth Amendment simply does not apply.  *See*

*Callahan v. Comm'r*, 334 F. App'x 754, 755 (7th Cir. 2009) ("[T]he Sixth Amendment

does not apply to civil proceedings.").  Lastly, there can be no question that the Eighth

Amendment's prohibitions against "[e]xcessive bail," "excessive fines," and "cruel and

unusual punishments" afford Plaintiff no relief here.  U.S. Const. Amend. VIII.  The

Eighth Amendment, by its very terms, only applies in the context of a criminal

prosecution or conviction, neither of which have occurred in this case.  Therefore,

Defendants are entitled to summary judgment on these three claims.

### D.  Title VII Discriminatory Termination Claim

Plaintiff alleges that Defendants terminated his employment due to his religion,

Islam, and national origin, Moorish.[3]  Under Title VII, "It shall be an unlawful

employment practice for an employer . . . to discharge any individual . . . because of such

individual's race, color, religion, sex, or national origin."  42 U.S.C. § 2000e-2(a).  It is

well established that there are two ways in which a plaintiff may prove a claim under

Title VII, namely the "direct" and "indirect" methods of proof.  However, in recent years

the Seventh Circuit has "questioned the utility of the distinctions between them,

recognizing that both methods of proof converge on the same fundamental question:

---

[3] In his briefing on the cross-motions for summary judgment, Plaintiff asserts that Walker-Guess
violated Title VII by discriminating against him on the basis of his race.  Race discrimination
was not mentioned in his Complaint or Amended Complaint, and thus cannot be raised at the
summary judgment stage: "[A] plaintiff 'may not amend his complaint through arguments in his
brief in opposition to a motion for summary judgment.'"  *Anderson v. Donahoe*, 699 F.3d 989,
997 (7th Cir. 2012) (quoting *Grayson v. O'Neill*, 308 F.3d 808, 817 (7th Cir. 2002)).

could a reasonable trier of fact infer retaliation or discrimination, as the case may be?"
*Castro v. DeVry Univ., Inc.*, 786 F.3d 559, 564 (7th Cir. 2015).  Put more bluntly, "[T]he time has come to jettison the ossified direct/indirect paradigm in favor of a simple analysis of whether a reasonable jury could infer prohibited discrimination."  *Perez v. Thorntons, Inc.*, 731 F.3d 699, 703 (7th Cir. 2013) (internal quotation marks omitted). *See Good v. Univ. of Chi. Med. Ctr.*, 673 F.3d 670, 680 (7th Cir. 2012) ("[T]he direct and indirect methods . . . have become too complex, too rigid, and too far removed from the statutory question of discriminatory causation.").  This court joins "the growing chorus of opinions in this circuit, signed onto by a majority of active judges," *Hitchcock v. Angel Corps, Inc.*, 718 F.3d 733, 737 (7th Cir. 2013), by observing that "when all is said and done, the fundamental question at the summary judgment stage is simply whether a reasonable jury could find prohibited discrimination."  *Bass v. Joliet Pub. Sch. Dist. No. 86*, 746 F.3d 835, 840 (7th Cir. 2014).

In this case, a reasonable jury could not find prohibited discrimination.  The record is replete with legitimate justifications for Plaintiff's termination: (1) a student alleged that Plaintiff had inappropriately touched him during a pat-down search; (2) a student alleged that Plaintiff had given her his phone number and said to call him when she turned eighteen; (3) Plaintiff shoved a student, causing the student's head to hit a wall; (4) a student alleged that Plaintiff body-slammed him into the ground; (5) a student alleged that Plaintiff had dug his fingers into the student's arms and then grabbed him by the neck; (6) a student alleged that Plaintiff punched him in the stomach; (7) a student alleged that Plaintiff pushed a table into his leg; (8) Plaintiff failed to appear for work on

one occasion; and (9) Plaintiff inappropriately argued with parents.  Plaintiff offers

justifications and arguments for each of these incidents (e.g., all of the allegations made

to DCS were unsubstantiated for lack of evidence).  However, Plaintiff fails to appreciate

that the doctrine of at-will employment[4] "permits both the employer and the employee to

terminate the employment at any time for a 'good reason, bad reason, or no reason at

all.'"  *Meyers v. Meyers*, 861 N.E.2d 704, 706 (Ind. 2007) (quoting *Montgomery v. Bd. of

Trustees of Purdue Univ.*, 849 N.E.2d 1120, 1128 (Ind. 2006)).  Thus, even if the court

agreed that Defendants' reasons for termination were flawed, that would not warrant

relief under Title VII: "Title VII does not forbid sloppy, mistaken, or unfair terminations;

it forbids discriminatory or retaliatory terminations."  *Collins v. Am. Red Cross*, 715 F.3d

994, 999 (7th Cir. 2013).

Plaintiff could have been legally terminated for any single one of the incidents

mentioned above.  Importantly, Walker-Guess specifically instructed Plaintiff, "[Y]our

conduct and comments towards students and co-workers are to remain above reproach

and you are to model the behavior expected of all employees."  (Exhibit G).  The

undisputed evidence shows that Plaintiff did not remain above reproach.  That is enough

to warrant termination.  As the Seventh Circuit explained, "A federal court does not sit as

a 'super-personnel department,' second-guessing an employer's legitimate concerns

---

[4] Plaintiff does not claim that he could only be terminated for cause.  Furthermore, in Indiana, "[t]he presumption of at-will employment is strong . . . ."  *Baker v. Tremco Inc.*, 917 N.E.2d 650, 653 (Ind. 2009).  With no argument to the contrary, the court must presume that Plaintiff was an at-will employee.

about an employee's performance." *Mintz v. Caterpillar Inc.*, 788 F.3d 673, 680 (7th Cir.

2015) (quoting *Coleman v. Donahoe*, 667 F.3d 835, 862 (7th Cir. 2012)).

Plaintiff simply offers no evidence of discrimination based upon religion or

national origin.  Rather, IPS allowed Plaintiff to be a part of the Diversity Cadre

Committee, and welcomed his presentation on Moorish history and culture.  The only

evidence that might allow for an inference of discrimination is IPS' denial of Plaintiff's

request for a day off of work for Moorish Christmas.  However, this does not represent

discrimination for the reasons discussed in Part IV(G).  Plaintiff's speculation that

discrimination occurred is not enough to survive summary judgment.  *See Miller v.

Gonzalez*, 761 F.3d 822, 827 (7th Cir. 2014) ("[S]peculation, hunches and intuition

cannot defeat summary judgment.").  Due to the overwhelming evidence of Plaintiff's

unsatisfactory job performance and the lack of any evidence suggesting discrimination, a

reasonable jury could not find for Plaintiff on his Title VII discriminatory termination

claim.  Summary judgment for Defendants is therefore required.

### E.  Title VII Retaliatory Termination Claim

Plaintiff also avers that he was terminated in retaliation for the September 2, 2013

letter he wrote to Ms. Kent.  (*See* Exhibit D).  According to Plaintiff, this letter was

"unflattering" to Defendants because it discusses "maltreatment Plaintiff incurred from

his school principal Defendant Kris Walker-Guess, his Islamic religious beliefs, Moorish

cultural customs, Moorish national origin, [and] his persistence to publicly advocate

infusing Moorish history and culture into Indiana's educational curriculum . . . ."

(Complaint at Part III, ¶ 2).  Title VII prohibits an employer from "discriminat[ing]

16

against any of his employees . . . because he has opposed any practice made an unlawful employment practice by this title, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this title." 42 U.S.C. § 2000e-3(a). "The antiretaliation provision seeks to prevent employer interference with unfettered access to Title VII's remedial mechanisms. It does so by prohibiting employer actions that are likely to deter victims of discrimination from complaining to the EEOC, the courts, and their employers." *Burlington Northern & Santa Fe Ry. v. White*, 548 U.S. 53, 68 (2006) (internal citations and quotation marks omitted).

Again, the narrow issue before the court is whether "a reasonable trier of fact [could] infer retaliation . . . ." *Castro*, 786 F.3d at 564. Importantly though, "Title VII retaliation claims require proof that the desire to retaliate was the *but-for cause* of the challenged employment action." *Univ. of Tex. Southwestern Med. Ctr. v. Nassar*, 133 S. Ct. 2517, 2528 (2013) (emphasis added). Plaintiff simply cannot satisfy this burden. As already discussed in Part IV(D), there is substantial evidence in the record of Plaintiff's unsatisfactory job performance. *See Jackson v. St. Joseph State Hospital*, 840 F.2d 1387, 1391 (8th Cir. 1988) ("Title VII protection from retaliation for filing a complaint does not clothe the complainant with immunity for past and present inadequacies [or] unsatisfactory performance . . . ."). Even if the court agreed that retaliation was a motivating factor in the decision to discharge him, that would not save Plaintiff's claim. *See Reynolds v. Tangherlini*, 737 F.3d 1093, 1104 (7th Cir. 2013) ("[R]etaliation claims

under Title VII require traditional but-for causation, not a lesser 'motivating factor' standard of causation.").

A reasonable jury could not find retaliation under Title VII in this case.  Thus, summary judgment for Defendants is warranted.  Importantly, even if this court navigated the "snarls and knots" and analyzed Plaintiff's Title VII claims under the frequently "bemoaned" direct and indirect methods of proof, *Orton-Bell v. Indiana*, 759 F.3d 768, 773 (7th Cir. 2014), the result would be the same.

### F.  Title VII Hostile Work Environment Claim

Plaintiff alleges that was subjected to a hostile work environment during his employment with Defendants.[5]  As the Supreme Court has made clear, "Title VII prohibits the creation of a hostile work environment."  *Vance v. Ball State Univ.*, 133 S.Ct. 2434, 2441 (2013).  The *Vance* Court went on to note, "In such cases, we have held, the plaintiff must show that the work environment was so pervaded by discrimination that the terms and conditions of employment were altered."  *Id.*  In order to survive summary judgment, Plaintiff must establish four elements: "(1) the work environment must have been both subjectively and objectively offensive; (2) [Plaintiff's religion] or national origin must have been the cause of the harassment; (3) the conduct must have been severe or pervasive; and (4) there must be a basis for employer liability."  *Chaib v. Indiana*, 744 F.3d 974, 985 (7th Cir. 2014).

---

[5] Defendants contend that the court should summarily dismiss this claim because it was not developed until Plaintiff's reply brief.  This argument is not well taken, as Plaintiff discussed this claim in his Complaint, his Amended Complaint, and the opening brief for his Motion for Summary Judgment.

Assuming without deciding that Plaintiff can satisfy the first, second, and fourth elements, he cannot satisfy the third.  The Seventh Circuit opined, "To rise to the level of an actionable hostile work environment, the complained-of conduct must have been sufficiently severe or pervasive to have altered the conditions of her employment such that it created an abusive working environment."  *Passananti v. Cook County*, 689 F.3d 655, 667 (7th Cir. 2012).  The proper analysis on this element is well established:

> In determining whether the conduct is sufficiently severe or pervasive to be actionable, we look at the totality of the circumstances, including: (1) the frequency of the discriminatory conduct; (2) how offensive a reasonable person would deem it to be; (3) whether it is physically threatening or humiliating conduct as opposed to verbal abuse; (4) whether it unreasonably interferes with an employee's work performance; and (5) whether it was directed at the victim.

*Nichols v. Mich. City Plant Planning Dep't*, 755 F.3d 594, 601 (7th Cir. 2014).

In support of this claim, Plaintiff alleges that Walker-Guess held Christian prayers inside the school building and during school hours[6], punished Plaintiff for distributing what she perceived to be religious material to a parent, assigned Plaintiff to a small office instead a full-size classroom, suspended Plaintiff for unfounded reasons, and sent Plaintiff demeaning and condescending messages.  Initially, the court cannot consider the allegation regarding Christian prayer circles because Plaintiff fails to cite to any evidence in support of the claim.  Plaintiff states that Defendants admitted to this in a pretrial conference before the Magistrate Judge, but he seemingly made no effort to obtain a

---

[6] Plaintiff alleges that this incident violated Title VII, but does not connect it to a specific claim under the statute.  The court proceeds as if he meant to include it as evidence of a hostile work environment.  Notably, Plaintiff makes no argument that this practice violated the First Amendment.

transcript of that proceeding.  Further, the Magistrate Judge's Minute Entry on that

proceeding does not mention this purported admission.  (*See* Filing No. 15, Entry and

Order from Pretrial Conference).  As the Seventh Circuit has made clear, "[A] plaintiff's

'conclusory statements, unsupported by the evidence of record, are insufficient to avoid

summary judgment.'"  *Cooper-Schut v. Visteon Auto. Sys.*, 361 F.3d 421, 429 (7th Cir.

2004) (quoting *Albiero v. City of Kankakee*, 246 F.3d 927, 933 (7th Cir. 2001)).  *See*

*Sojka v. Bovis Lend Lease, Inc.*, 686 F.3d 394, 398 (7th Cir. 2012) ("It is not the duty of

the court to scour the record in search of evidence to defeat a motion for summary

judgment.").

      Additionally, the messages cited by Plaintiff do not rise to the level of severe or

pervasive conduct.  While most of the messages cited by Plaintiff address deficiencies in

his work performance, they are not threatening or humiliating.  For example, in one letter,

Walker-Guess expressly stated that the reason for her message was to "mak[e] [Plaintiff]

aware of the expectations as a Behvior (sic) Adjustment Facilitator at Joyce Kilmer

Academy."  (Filing No. 1-2, Exhibit A).  Walker-Guess concluded that this letter was

necessary because she "had to explain three times that **students <u>must</u> have academics at**

**all times while at the BAC.**"  (*Id.*) (emphasis original).  In an email message, Walker-

Guess stated, "During the hours of 8:30am. and 4:00pm. you are employed to redirect the

behaviors of the students here at Joyce Kilmer Academy.  Reading the newspaper or

writing articles is not part of your job.  Sending students to room 106, the resource room,

for a time out when you and your room is the designated Behavior Adjustment Center is

unacceptable and must stop today."  (Filing No. 1-2, Exhibit B).  Plaintiff also cites a

letter wherein Walker-Guess stated, "I am recommending the termination of your employment with Indianapolis Public Schools due. (sic) This action is being taken due to your ongoing unsatisfactory performance and interaction with the students, which has led to numerous investigations, both internally, and through Child Protective Services." (Exhibit N).

Plaintiff may not have enjoyed reading these messages, but that does not mean Defendants are liable under Title VII. Rather, many of the messages are evidence of Walker-Guess making reasonable efforts to help Plaintiff understand and satisfactorily complete his job duties in lieu of simply terminating his employment. Moreover, the undisputed evidence directly contradicts Plaintiff's claim that his suspensions were unfounded. Plaintiff complains that he was assigned to a smaller work space than he preferred, but a hostile work environment claim was not designed to address "the ordinary tribulations of the workplace." *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998). *See Graham v. Holder*, 657 F. Supp. 2d 210, 216 (D.D.C. 2009) ("Not all things that make an employee unhappy create a hostile work environment."). Overall, no reasonable jury could find that these incidents "altered the conditions of [Plaintiff's] employment such that [they] created an abusive working environment." *Passananti*, 689 F.3d at 667. Consequently, summary judgment for Defendants is warranted.

### G. First Amendment Claims

While Plaintiff's Complaint alleges violations of the First Amendment, it is somewhat unclear what type of violations Plaintiff believes occurred. Construing the Complaint liberally, the court determines that Plaintiff has advanced two distinct claims

under the First Amendment: one for retaliation and one under the Establishment Clause.
The court addresses each in turn.

First, Plaintiff alleges that his employment with IPS was terminated because of the
"unflattering" September 2, 2013 letter he wrote to Ms. Kent.[7]  (*See* Exhibit D).  "It is
well-established in our jurisprudence that a public employee does not shed his First
Amendment rights at the steps of the government building."  *Lalowski v. City of Des
Plaines*, 789 F.3d 784, 790 (7th Cir. 2015) (internal quotation marks and citation
omitted).  In order to survive summary judgment, "a public employee must show that: (1)
[he] engaged in constitutionally protected speech; (2) [he] suffered a deprivation because
of her employer's action; and (3) [his] protected speech was a but-for cause of the
employer's action."  *Diadenko v. Folino*, 741 F.3d 751, 755 (7th Cir. 2013).  Assuming
without deciding that Plaintiff can satisfy the first two elements, he cannot satisfy the
third for the reasons stated in Part IV(D).  *See Kidwell v. Eisenhauer*, 679 F.3d 957, 965
(7th Cir. 2012) ("In the end, the plaintiff must demonstrate that, but for his protected
speech, the employer would not have taken the adverse action.").

Second, Plaintiff asserts that Defendants recognize Christian holidays by
providing employees with paid time off, but refuse to recognize Moorish holidays.  In
support, Plaintiff directs the court to the November 28, 2012 e-mail message he sent to

---

[7] Plaintiff runs afoul of *Anderson* again by arguing that the alleged retaliation was also based
upon a November 20, 2013 letter he wrote to Ms. Kent (Filing No. 1-3, Exhibit L) and his essay,
"Attention: Negroes, Blacks, Coloreds and African-Americans Look at What Happened to You!"
(Exhibit K).  The court does not consider these arguments because, as previously stated, Plaintiff
"may not amend his complaint through arguments in his brief in opposition to a motion for
summary judgment."  *Anderson*, 699 F.3d at 997.

several IPS administrators regarding a request for time off of work to celebrate certain

Moorish holidays.  (*See* Exhibit 2).  Defendant White sent an e-mail message in response

that same day, which reads, "You may not have an excused day off for the Moorish

Christmas.  This is not a recognize (sic) holiday by the Indianapolis Public Schools."

(Exhibit 3).

The Establishment Clause of the First Amendment is violated "if the government

favors one religion over another (or religion over nonreligion) without a legitimate

secular reason for doing so."  *Kaufman v. Pugh*, 733 F.3d 692, 696 (7th Cir. 2013).  *See*

*Metzl v. Leininger*, 57 F.3d 618, 621 (7th Cir. 1995) ("[T]he First Amendment does not

allow a state to make it easier for adherents of one faith to practice their religion than for

adherents of another faith to practice their religion, unless there is a secular justification

for the difference in treatment.").  In this case, a reasonable jury could not find that the

state government, through Defendants, is favoring Christianity over Islam.  Plaintiff

emphasizes that IPS gives employees paid days off of work for Christmas Eve and

Christmas Day, but refused to grant Plaintiff a day off of work for Moorish Christmas.

However, as the Supreme Court has made clear, "[G]overnment may celebrate Christmas

in some manner and form."  *Cty. of Allegheny v. ACLU*, 492 U.S. 573, 601 (1989).  A

state violates the First Amendment if it "observe[s] [Christmas] as a Christian holy day

by suggesting that people praise God for the birth of Jesus."  *Id.*  *See McGowan v.*

*Maryland*, 366 U.S. 420, 442 (1961) (holding that a Maryland statute that proscribed

business activity on Sunday did not violate the Establishment Clause).

Plaintiff's position is similar to one rejected by the Seventh Circuit in

*Bridenbaugh v. O'Bannon*, 185 F.3d 796 (7th Cir. 1999).  In *Bridenbaugh*, the plaintiff

alleged "that the Good Friday holiday (given by the state of Indiana to state employees)

advances religion because it makes it easier for Christians to practice their faith by having

the day off on a day which (to them) is a religious holiday."  *Id.* at 801.  Finding no First

Amendment violation, the court remarked, "No court has ever held that the Establishment

Clause is violated merely because a state holiday has the indirect effect of making it is

easier for people to practice their faith. . . .  [A]ny benefit to religion flowing from the

Good Friday holiday is indirect, remote and incidental to the primary secular purposes for

the holiday."  *Id.* at 801-02.  *Allegheny*, *McGowan*, and *Bridenbaugh* teach that merely

giving employees paid time off for Christmas Eve and Christmas Day-if that is even true,

as Plaintiff has presented no evidence to substantiate that claim-does not constitute an

endorsement of Christianity.  Thus, Plaintiff has not shown that Defendants favor

Christianity over Islam for purposes of the Establishment Clause.  Defendants are entitled

to summary judgment on both of Plaintiff's First Amendment claims.

### H. Fourteenth Amendment Claims

Plaintiff advances equal protection and procedural due process claims under the

Fourteenth Amendment.  The Fourteenth Amendment provides, "[N]or shall any State

deprive any person of life, liberty, or property, without due process of law; nor deny to

any person within its jurisdiction the equal protection of the laws."  The Equal Protection

Clause "requires that 'all persons similarly situated . . . be treated alike,'" *Council 31 of*

*the Am. Fed'n of State, Cty. & Mun. Emples. v. Quinn*, 680 F.3d 875, 886 (7th Cir. 2012)

24

(quoting *United States v. Brucker*, 646 F.3d 1012, 1017 (7th Cir. 2011)), and thereby

"protects individuals against intentional, arbitrary discrimination by government

officials." *Hayden v. Greensburg Cmty. Sch. Corp.*, 743 F.3d 569, 577 (7th Cir. 2014).

As Defendants note, this claim is a non-starter because Plaintiff fails to even allege that

he was treated differently than similarly situated individuals.  Whereas the Equal

Protection Clause was enacted to ensure the "similar treatment of similarly-situated

persons," *Varner v. Monohan*, 460 F.3d 861, 865 (7th Cir. 2006), a complete lack of

evidence or discussion regarding similarly-situated persons dooms his claim.  *See*

*Mathews v. Raemisch*, 513 F. App'x 605, 608 (7th Cir. 2013) ("[T]o sustain an equal

protection claim, plaintiffs must also allege that they have been treated differently from

those similarly situated.").

Plaintiff avers that he was denied procedural due process when Defendants offered

vague, unsubstantiated reasons for his termination and also when Defendants refused to

allow him to have a lay advocate during the internal appeal of his termination.  In order to

proceed on a procedural due process claim, Plaintiff must show "that he has a cognizable

liberty interest under the Fourteenth Amendment, that he was deprived of that liberty

interest, and that the deprivation was without due process."  *O'Gorman v. City of Chi.*,

777 F.3d 885, 891 (7th Cir. 2015).  Demonstrating a cognizable liberty interest, or

property interest as it is often referred, is critical because "[t]he Fourteenth Amendment's

Due Process Clause does not itself create any property interests."  *Dibble v. Quinn*, 793

F.3d 803, 808 (7th Cir. 2015).  Rather, it protects property interests "that stem from an

independent source such as state law."  *Bd. of Regents v. Roth*, 408 U.S. 564, 577 (1972).

Plaintiff suggests that he has a property interest in his employment with IPS, but this alone is insufficient at the summary judgment stage.

"To have a protectable property interest in a benefit, such as continued employment, a plaintiff must have more than an 'abstract need or desire for it' and more than a 'unilateral expectation of it.'  Instead, a plaintiff must have a 'legitimate claim of entitlement to it.'"  *Cole v. Milwaukee Area Tech. Coll. Dist.*, 634 F.3d 901, 904 (7th Cir. 2011) (quoting *Roth*, 408 U.S. at 577).  As a general rule, "a public employee has a legitimate claim of entitlement to continued employment 'when an employer's discretion is clearly limited so that the employee cannot be denied employment unless specific conditions are met.'"  *Dibble*, 793 F.3d at 808 (quoting *Colburn v. Trustees of Indiana Univ.*, 973 F.2d 581, 589 (7th Cir. 1992)).  Put another way, "In the employment context, a plaintiff generally is required to show that the terms of his employment provide for termination only 'for cause' or otherwise evince 'mutually explicit understandings' of continued employment."  *Cole*, 634 F.3d at 904 (quoting *Omosegbon v. Wells*, 335 F.3d 668, 674 (7th Cir. 2003)).

As already discussed, Plaintiff made no argument that suggests his employment could only be terminated "for cause."  The court must therefore presume that Plaintiff was an at-will employee.  *See Baker*, 917 N.E.2d at 653.  Consequently, Plaintiff had no property interest in his employment.  *Cole*, 634 F.3d at 904.  That determination is fatal to his procedural due process claim.  Defendants are entitled to summary judgment on both of Plaintiff's Fourteenth Amendment claims.

**V. Conclusion**

For the foregoing reasons, the court **GRANTS** Defendant's Motion for Summary

Judgment (Filing No. 55), **DENIES** Plaintiff's Motion for Partial Summary Judgment

(Filing No. 53), and **DENIES** Plaintiff's Second Motion for Partial Summary Judgment

(Filing No. 59).

**SO ORDERED** this 21st day of October 2015.

RICHARD L. YOUNG,  CHIEF JUDGE
United States District Court
Southern District of Indiana

Distributed Electronically to Registered Counsel of Record.

By U.S. Mail:
S.A. Tinnin-Bey
2512 Burton Avenue
Indianapolis, IN  46208